Good morning, your honors. I'm Jeff Daniels from the Federal Defender's Office in Sacramento representing Ms. Carrillo-Hernandez. This case presents an issue of the meaning and interpretation of the guideline and application of governing illegal reentry sentences for defendants who have previously been convicted and sentenced for drug cases. It raises the same issue that was recently decided, substantially the same issue that was decided in United States v. Catalan. We were instructed to be prepared to argue the application of that. In this case, and in short, I think Catalan controls resolution of the meaning and application of the guideline. It's the same guideline. The two defendants were in the same situation in that as of the time they had previously been deported, they had been convicted of a drug offense, but the sentence had not been 13 months or longer than 13 months, so that the guideline applicable on its face was the plus 12 increase. In both cases, after they returned, their drug sentences were increased by the aggregation of a violation component of the sentence, and that was relied on in both instances by the lower court to apply a 16-level increase to the guideline offense level rather than the 12-level thing. Catalan decided that there was a timing issue that controlled and that you look at the length of the sentence as it existed at the time of the last previous deportation. With that application, Ms. Carrillo-Hernandez, like Mr. Catalan, was properly subject to a 12-level increase. So the question is, if there was a mistake in the trial court, and there appears to have been, was it harmless? I believe it was not because the court relied on the erroneous calculation in assessing the evaluation. Did the court not say, no matter which range I start with, I come out at the same place? I don't think it was.   I don't think it was. He said that he would apply the ‑‑ that he had based his sentence on the totality of the circumstances, but I don't ‑‑ he did not engage in an evaluation under both sides of the dispute. And the fact ‑‑ I believe the fact of the matter is, since a ‑‑ Were you there at the sentencing? Yes. Okay. I was her lawyer throughout the proceedings. Mr. McCoy is an innocent bystander at this point. I don't think he was even in the office at the time of this case. But nevertheless, an offer was extended, and the only reason it was subsequently withdrawn was because of my efforts on Ms. Carrillo's behalf to see that her sentence was determined on the basis of inaccurate computation of the guidelines. The computation, the erroneous computation, began with a petition, petition, position taken by non-lawyers in the probation office. The trial counsel for the government has said, well, actually, no, I don't believe she wrote the brief. The government took the position that parties in the Third Circuit followed the probation office whatever they did, which means that the probation office would be able to require courts to sentence on the basis of inaccuracies, and it's simply, as a factual matter, not true and not established on the record. The guidelines overlap. The wrong guideline overlapped with the right guideline. Is that correct? Not exactly. Since I went to sentencing without a fast-track offer, then the sentence imposed was at the top of the guideline for a non-lawyer. Setting aside the fast-track issue, the guidelines did overlap. Yes. Yes, they did. Setting that issue aside, that's true. But as to the harmlessness of the error, I believe the Court should look at the conduct of the government in taking the position it did about not responding on the merits to a dispute about the guidelines and saying that they administer the fast-track program without regard to the accuracy of the guidelines. I don't think they should be allowed to do that. I don't think that was what should happen. Well, the evaluation that the judge entered to seemed to be pretty thorough, and the judge explained very precisely why the sentence was chosen. Am I wrong about that? As a fair evaluation, I think there's an additional factor to be considered in that, and that is that he made the comment also that he didn't understand why this was a fast-track offer, which is not part of the analysis in a non-fast-track case as it came before him. And it's, as I said, based anecdotally, so far as the record is concerned, that he has never done that in the past. He has never rejected a fast-track offer. There is nothing about this case that stood out to make it anything but a mine-run fast-track case. But there was not a fast-track offer out there for this case. Well, there was initially. Yes, it was. Right. But at the point when you were proceeding to sentencing, it wasn't a fast-track case. Well, that's true, but it's part and parcel of the circumstances of the way the case proceeded below, and it's part and parcel of the way the case proceeded. But the original sentence was way below the guidelines, wasn't it? It was 11 months below the guidelines as finally computed. So it wasn't a guideline sentence to start with, was it? No, that's true, but it was well above what it would have. I mean, it was at the top of the guideline level for a plus-12 increase without a fast-track. But that's the point. It overlapped and was inside of both. It was. And if you decide that the existence and the reasons surrounding the withdrawal of the fast-track are not things that ought to be addressed and corrected. I'm just not tracking your fast-track problem. Tell me precisely what it is that affects the sentence in such a way that renders it necessarily harmful. Like all defendants who came before the court, she was entitled to be treated the same way or similarly as other people were. She was not treated similarly in the way that the fast-track offer, which is widely offered in illegal reentry cases. It was a full four-level reduction. It was made routinely. And the only reason it was withdrawn is because she exerted, attempted to exert a right to have an accurate guideline computation be the basis for the offer. A fast-track reduction which had been made would have made the guidelines 24 to 30 months. The purpose of the fast-track program is to get the cases through the system quickly. So if the case doesn't fit within that rubric, then the government has the option of not offering fast-track because it's not going to go through the system quickly. It's not going to save the resources that a true fast-track case would save. And that's the government's discretion. We can't interfere in the executive branch's decision. Well, the fast-track program is not an executive program. It's part of the guidelines. It is the same kind of mixed bag as sentencing guidelines. But who makes the decision? It's up to the government to make the decision whether or not to make the offer. And they did make the offer. It's not up to them. I submit that it's not up to them to withdraw the offer because they refuse to engage in what's not rocket science, but what was overwhelmingly clear, as this Court found in Catalan, is the sentencing. It wasn't clear at all. It was on the Catalan case. It was not clear at all. And that's why we deferred submission on that case to let the Commission make the decision because it was utterly unclear. And many judges have been going the other way. A single panel of the Second Circuit was the only contrary appellate authority. Appellate court, but not at the trial court level. That's why we deferred submission because it was unclear. And I must say, I didn't know what the record of the Catalan case showed about what the practice was on the lower level. Did you want to save some time for rebuttal? I do. Thank you. We'll hear from the government. Maybe the government will agree with you. Good morning. Michael McCoy on behalf of the United States. In light of this Court's recent decision in Catalan, it's clear that a 12-level enhancement, as opposed to a 16-level enhancement, should have been applied to the defendant's offense level in this case. Notwithstanding the application of that 16-level enhancement in this case, however, the district court judge made sufficient findings to support the term of imprisonment of 46 months in this case, and consequently the error was harmless. So here's the problem I have with your argument. Our cases say that if you start with a procedural violation, which means miscalculating the guidelines, that that's error that causes or that requires a remand. In the case of Munoz-Camarena, as well as Leal Vega. Footnote 5 is dictum. Correct. Go ahead. In Leal Vega in particular, the Court outlined several examples where the error is harmless and remand is not required, one of them being the fact that the sentence that was eventually imposed was actually within the correct guideline range, as was the case in this situation. I mean, here you have the judge, and I think the record is brilliantly clear. First, that guideline, the first sentence was not a guideline sentence, though. No. He actually. It was below the guidelines. Correct. Correct. He varied below. And the reason why he, as outlined in the record, that he believed that 46 months was appropriate is because he was looking at certain static factors independent of the guidelines. He was looking at her history and characteristics, the fact that she had been deported twice after being ordered twice by a court not to come back in the country, the fact that she had two drug charges. And he was comparing her to other defendants similarly situated and was looking at every factor. As he said in the record, I looked at every factor under 18. Was he also considering the other interpretation of the statute, the one that would provide for a higher guideline? I believe at one point in the sentence. Is that part of this? Should we consider that as being part of his consideration? That's been changed now. He's got the other interpretation. So he's on a somewhat different wavelength. Yes, Your Honor. He did consider both. Obviously, both positions, both the government's position as well as the defense's position on the guidelines had been fully briefed and argued prior to making that decision. What did he say? He said notwithstanding the disagreements regarding these guidelines, I believe that a term of imprisonment of 46 months is appropriate because of these static factors. And what's interesting about this case he applied the 16-level enhancement. I mean, first we have to calculate the guideline range. So in calculating the guideline range, he did apply the 16-level enhancement, right? Correct. So he took the side of the government on that. Correct, Your Honor. He did take the side of the government. But I believe what's clear in the record is that even with the application of the 16-level enhancement, the decision that he made to impose a term of imprisonment of 46 months was based on these other static factors. Here's the problem for me. Generally, when a judge sentences, they start with the he or she starts with the range. Correct. And work from there. So if you start with the higher range and work with that, it may be different than if you start with the lower range and work with that. If he had a number of months in his mind that he thought should be deducted or whatever, it makes a difference what range you start with. And that's the difficulty I have with your argument, is that we don't know if the judge started with a lower guideline range whether or not the sentence would have been lower. I mean, do you understand what I'm saying? I do, Your Honor. And I think pointing out that the Court's decision in Leal-Vega as well as in Munoz-Camarena is important here because in those cases, I would agree with you, the judge in those cases said in the case of Leal-Vega, he used the boilerplate language of I believe this sentence is sufficient but not greater than necessary. And Munoz-Camarena, the judge made the point of saying, regardless, I would have imposed the same sentence whether the appellate court says the lower guideline range applies or the higher guideline range applies. That wasn't good enough. How does this case differ in? Because, and you're correct, Your Honor, without more. And that was the point that the Court made very clear. Without more, that's not enough. But in this case, there is more. There are pages of more in the sentencing record showing how this judge, the district court judge, carefully went through all of the factors under 3553A, carefully went through her history and characteristics, carefully went through the nature and circumstances of the crime, and concluded that based on the totality of the circumstances, a term of imprisonment of 46 months was what was appropriate in this case and for this defendant. Mindful, yes, of the guidelines. But at the same point, believing that this was the appropriate sentence for this particular defendant. And, you know, I think it's no small point that it's that that sentence ends up being within the correct guideline range. And for that reason, the government believes that the error was harmless. There was no overlap in Munoz-Camarena. There were a few months' difference between the correct range and the incorrect range, if I remember. I believe that's correct, yes, Your Honor. But the language in Munoz that bothers me is it says the extent of the sentence range necessarily is different when the range is different. So a one-size-fits-all explanation ordinarily does not suffice. I mean, just to say I would have imposed the same sentence regardless, to me, sounds like a one-size-fits-all explanation. But he didn't say that in this case, Your Honor. He took it much farther than the judge in Munoz-Camarena and went through a very thorough analysis to determine what was the appropriate sentence. In Munoz-Camarena, the judge simply stopped at that and said, you know what, I'm going to impose the same sentence regardless. Period. End of story. In this case, the judge did not stop there. He continued and provided, again, a very thorough analysis in regards to justify his imposition of a term of imprisonment, which was actually 11 months below the guideline range that was set at that time, but, you know, coincidentally falls within the correct guideline range based on the Court's decision in Catalan with the 12-level enhancement. Isn't the fact that it was below the guideline range the first time around somewhat to vitiate the argument that it was still within the guideline range just coincidentally turned out to be that way the second time around? Again, I think it is coincidental because I think I believe that the judge's decision of 46 months was not because he was trying to split the baby, but because he truly believed that this was the appropriate sentence. We're doing a little mind-reading on that one, though, aren't we? I don't know that we have to do mind-reading, Your Honor. I think, again, the record is – outlines the judge's thinking, and he's, again, very deliberate in how he – what his rationale was, what his justification was for imposing this term of imprisonment. Did he give that justification after he said he would impose the same sentence or before he said that? Before, Your Honor. If I remember correctly, he went through all these different factors and said, this is what I believe the appropriate term of imprisonment should be. Is there any danger or problem with sending this back? I mean, if you're right, it's going to be the same sentence. Correct. What's the downside to sending this back just to make sure? Well, I think it's, you know, an issue of judicial economy. I don't know if that's significant enough, but I believe that the Court and this judge has already – the record's already been established. The sentencing hearing's already been conducted. It was a full and fair sentencing hearing by anyone's determination. And to send it back again for a review is – So if the goose is already cooked, why put it back in the oven? Yes, Your Honor, if the Court has no further questions. All right. Thank you. Thank you. You have rebuttal time. I have a question. Yes, sir. Reading this sentencing record, it's pretty comprehensive, pretty to the point. Do you honestly believe there's going to be a different sentence if we send this back? I think it's very possible. And tell us why. The reason is that the judge's ultimate sentence was based on consideration of a 57-to-71-month range, and it implemented the probation officer's recommendation of 46 months. But it wasn't a rubber stamp at all. I mean, the judge went through very carefully all the factors. No, but I think if the case goes back, he's going to be looking at a recommendation based on a range of 37-to-46 months, possibly a recommendation lower. It's not written in stone that what I've complained about in the history that led to this consideration, independent of fast-track offer, which was fairly on the table in the first place, is going to happen again. I mean, it is possible that they will say – The one comment I wanted to make, by the way, was that I don't believe that Judge England, in the course of sentencing, said he would impose the same sentence regardless of the lower range. He rejected the lower range early on. He did say that he thought the sentence he chose was the proper one. But it wasn't as a – by any explicit consideration that he would have been dealing with a 24- to 30-month range as I was trying to persuade him to take into account. But you would not have any objection if we remanded this case to Judge England considering it? No. Under all the circumstances, I would not expect you to grant the relief I sought in sending it to another judge. And so – Yeah, because he did say that this was his starting point. That's the thing that bothers me. He said my starting point is the range that's calculated with the 16-level enhancement. So that's what's bothering me a little bit about the sentence that was imposed. And it will be open to us to supplement the factual background to see whether that has – Well, it depends on what the judge decides on remand. But you will see at your time. Thank you to both counsel for your helpful argument in this case. The case is submitted for decision by the Court.
judges: Cudahy, Trott, Rawlinson